**MILLER PIPELINE CORPORATION,**
**Plaintiff,**

v.

**BRITISH GAS plc, a corporation**
**of Great Britain, Defendant.**

**No. IP 94–1421C–B/S.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 10, 1995.

**1418**

Donald E. Knebel, Barnes & Thornburg, Indianapolis, Indiana, for Plaintiff.

William C. Barnard, Sommer & Barnard, Indianapolis, Indiana, Marvin Petry, Larson & Taylor, Arlington, Virginia, for Defendant.

## ENTRY

BARKER, Chief Judge.

This is before the Court on the defendant British Gas plc's ("British Gas") Motion to Dismiss, Transfer or Stay. For the reasons discussed below, the Motions to Dismiss and Transfer are denied and the Motion to Stay is denied as moot.

### I. Background

The facts relevant to this Motion are as follows. Plaintiff Miller Pipeline Corporation ("Miller") is an Ohio corporation, with its principal place of business in Indianapolis, Indiana. Defendant British Gas plc ("British Gas") is a corporation of Great Britain, with its principal place of business in London, England. Miller provides products and services relating to the trenchless repair and replacement of pipes, or "pipe bursting", in the United States. Miller asserts that British Gas also provides products and services relating to trenchless repair/replacement, or "pipe bursting", in the United States.

Trenchless repair/replacement operations facilitate the repair of damaged pipes and replacement of pipes having inadequate capacity. Devices known as "moles" enable repair/replacement operations to be carried out without digging a trench to expose the pipe being replaced. *Complaint,* ¶ 5. The mole is placed in a hole and moved along inside the damaged pipe, breaking the pipe, expanding the surrounding dirt, and pulling the replacement pipe into position. *Id.,* ¶ 6.

In the early 1980's, Ian Yarnell invented a new type of mole which uses an expandable shell which can be forced outwardly against the sides of a pipe, simultaneously breaking and expanding the pipe to make room for a replacement pipe. The expandable shell of the Yarnell mole moves intermittently through the pipe. When the mole is stationary, the shell expands, contacting the pipe walls over a relatively large surface, breaks the pipe, and then moves to a new position to repeat the process. *Id.,* ¶ 11. Yarnell applied for and received U.S. Patent No. 4,789,-

268 ("the '268 patent") for his mole and the methods for using it. *Id.*, ¶ 12. Miller is the owner of all rights, title, and interest in and to the '268 patent. Miller's products used for trenchless operations are marketed under the name "XPANDIT", and include the Yarnell mole and other devices. *Id.*, ¶ 14.

Miller alleges that British Gas markets a hydraulic pipe bursting system in the United States for use in the trenchless repair and replacement of pipes. *Id.*, ¶ 16. The complaint charges that British Gas' system includes a mole which also moves intermittently through the pipe. British Gas' mole allegedly uses an expandable shell which expands when the mole is stationary to contact the pipe over a large surface. *Id.*, ¶ 17. British Gas is the assignee of record on U.S. Patent No. 4,738,565 to Streatfield, et al. ("the '565 patent") and U.S. Patent No. 4,720,211 to Streatfield et al. ("the '211 patent"). *Id.*, ¶ 22. Both the '565 and '211 patents describe a different type of mole, one which utilizes blades at the front portion of the device to crack the walls of a pipe, and then displaces the cracked pipe walls with its larger rear portion as it moves forward through the pipe. *Id.*, ¶ 22. British Gas has granted licenses on the '565 and '211 patents to various U.S. licensees, including PIM Corporation, a New Jersey Corporation, and other U.S. companies not located in Indiana. *Declaration of Frank S.D. Roper*, ¶ 14.

Miller claims that in June, 1989, British Gas alleged that Miller's products, particularly the Yarnell mole, infringed the '565 and '211 patents. *Complaint*, ¶ 23. Miller further alleges that after witnessing a demonstration of the use of the Miller products including the Yarnell mole in Fredericksburg, Virginia in August, 1990, British Gas no longer asserted the '565 and '211 patents against Miller. *Id.*, ¶¶ 24–25.

Miller alleges that British Gas has since contacted Miller's customers who were carrying out trenchless repair/replacement operations using the Miller XPANDIT system, asserting that British Gas may be entitled to royalties for their trenchless operations. For example, on May 31, 1994, British Gas sent a letter to Mountain Cascade, Inc., a Miller customer located in Livermore, California, requesting that Mountain Cascade "take notice" of the '565 patent and indicating that British Gas was willing to grant a license to Mountain Cascade for carrying out pipe bursting or pipe cracking operations. *Complaint*, ¶¶ 27–28, exhibit C.

Miller has filed this suit against British Gas alleging in Count I that British Gas has engaged in "deliberate and unfounded efforts to confuse Miller's customers by calling attention to the '565 patent and implying that the use of the Miller XPANDIT system infringes ... the '565 patent" *Complaint*, ¶ 33. Miller claims that these actions are an attempt by British Gas to monopolize the sale of products and services relating to trenchless repair/replacement in the United States, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2. In Count 2 of its claim, Miller alleges that British Gas (through its U.S. licensee PIM) infringes the '268 patent by making, using and/or selling hydraulic pipe bursting systems.

The Complaint states that subject matter jurisdiction over the above described claims arises under 28 U.S.C. §§ 1331 and 1338, that personal jurisdiction is proper under 15 U.S.C. § 22 (Clayton Act, § 12), and that venue is proper under 28 U.S.C. § 1391(d). *Complaint*, ¶ 4. Defendant British Gas brings this motion to Dismiss for lack of Personal Jurisdiction under Fed.R.Civ.P. 12(b)(2), or in the alternative, to transfer the case to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. §§ 1406 and/or 1631.[1]

## II. Analysis

### A. *Motion to Dismiss for Lack of Personal Jurisdiction*

Two questions must be answered to determine whether British Gas is subject to the personal jurisdiction of this Court. First, we

---

1. British Gas also moved in the alternative to stay all proceedings in the case until after a decision is reached in *Trenchless Replacement Systems, Ltd. v. British Gas plc and PIM Corp.* ("the TRS action"), a patent case pending in the U.S. District Court for the District of New Jersey. This court has received notice that the TRS action has been dismissed pursuant to a settlement agreement. Therefore, the motion to stay is moot and need not be considered by this court.

must determine whether British Gas is amenable to process in this District. Second, we must determine whether haling British Gas into this Court is in accord with due process principles. *U.S. v. De Ortiz*, 910 F.2d 376, 382 (7th Cir.1990), *citing Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987).

### 1. *Service of Process*

Personal jurisdiction generally is determined in accordance with Rule 4 of the Federal Rules of Civil Procedure. *See, Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 715 n. 6, 102 S.Ct. 2099, 2111 n. 6, 72 L.Ed.2d 492 (1982). In particular, Fed.R.Civ.P. 4(k)(1)(D) provides that service of process "is effective to establish jurisdiction over the person of a defendant ... when authorized by a statute of the United States". *See also, Omni Capital*, 484 U.S. at 104, 108 S.Ct. at 409, *quoting, Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444–45, 66 S.Ct. 242, 245–46, 90 L.Ed. 185 (1946) ("Service of process is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person or the party served."); *De Ortiz*, 910 F.2d at 381–2, *citing Omni Capital*, 484 U.S. at 105, 108 S.Ct. at 410 (in federal question cases, amenability to service of process is determined by looking to the applicable federal statute).

British Gas argues that Rule 4(k)(1)(D) fails to provide a basis for personal jurisdiction because no federal statute applies in this case to authorize jurisdiction.

■ Plaintiff Miller relies, as the basis for personal jurisdiction over British Gas, upon Section 12 of the Clayton Act, 15 U.S.C. § 22 ("section 22"), which governs jurisdiction and venue in actions against corporations under the antitrust laws. Section 22 provides that:

Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; *and all process in such cases may be served in the district of*

*which it is an inhabitant, or wherever it may be found.*

15 U.S.C. § 22. (emphasis added).

British Gas claims that the service of process provision of section 22 cannot authorize personal jurisdiction unless the venue provision of Section 22 has also been satisfied. In other words, British Gas claims that because it is not an inhabitant, is not found in and does not transact business in this district, section 22 does not apply. However, in all federal actions against aliens, the applicable venue provision is 28 U.S.C. § 1391(d) ("section 1391(d)"), which provides that "[a]n alien may be sued in any district." 28 U.S.C. § 1391(d); *Brunswick Corp v. Suzuki Motor Co. Ltd*, 575 F.Supp. 1412, 1425 (E.D.Wis. 1983). *See also Pure Oil v. Suarez*, 384 U.S. 202, 86 S.Ct. 1394, 16 L.Ed.2d 474 (1966) (special venue provisions [such as section 22] supplement rather than pre-empt general venue statutes [such as section 1391(d) ] ); *VE Holding Corp v. Johnson Gas Appliance Co.*, 917 F.2d 1574 (Fed.Cir.1990), *cert. denied*, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991); *In re Regents of University of California*, 964 F.2d 1128, 1132 (Fed. Cir.1992). In fact, the "principle of broad and overriding application" stated by section 1391(d) is to prevent an alien defendant from using a narrower venue provision in another statute (such as Section 12 of the Clayton Act) as a "shield against suit". *Go–Video v. Akai Electric Company, Ltd.*, 885 F.2d 1406, 1410 (9th Cir.1989) *quoting, Brunette Machine Works Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 714, 92 S.Ct. 1936, 1941, 32 L.Ed.2d 428 (1972). The extraterritorial service of process provision in section 22 is available to Miller where, as here, venue is not established under that section, but instead, lies properly under 28 U.S.C. § 1391(d). *See, Go–Video* at 1413.

■ British Gas apparently believes that the appropriate federal statute to analyze for jurisdictional purposes in this case is 35 U.S.C. § 293 ("section 293") rather than section 22. Section 293 "authorizes the assertion of [personal] jurisdiction [by the District Court for the District of Columbia] over a non-resident owner of a U.S. patent in cases respecting the patent or rights thereunder".

*National Patent Dev. v. TJ Smith and Nephew, Ltd.*, 877 F.2d 1003, 1007 (D.C.Cir.1989). This court need not decide whether or not section 293 might authorize personal jurisdiction over British Gas in the District of Columbia or elsewhere, because the complaint relies upon another statute, 15 U.S.C. § 22, in support of personal jurisdiction.[2] Furthermore, the jurisdiction of the District Court for the District of Columbia is not at issue; the question is whether *this* Court has personal jurisdiction over British Gas. Even if section 293 does authorize personal jurisdiction in the District Court of the District of Columbia over both the antitrust and patent claims, that does not negate the fact that this Court has personal jurisdiction pursuant to 15 U.S.C. § 22.

As explained above, this Court finds that the amenability to process required for personal jurisdiction to be properly laid is supplied here pursuant to Fed.R.Civ.P. 4(k)(1)(D) and the extraterritorial service provision in 15 U.S.C. § 22.

### 2. *Due Process*

■ Having decided that 15 U.S.C. § 22 provides for service of process and that as a result, personal jurisdiction is authorized by Fed.R.Civ.P. 4(k)(1)(D), the remaining question is whether such an exercise of jurisdiction by this Court over British Gas accords with the requirements of due process. *De Ortiz*, 910 F.2d at 382. The due process clause protects a defendant from being subject to binding judgments of a forum with which the defendant has established no meaningful "contact, ties or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. State of Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)).

■ British Gas argues at length that it does not possess sufficient minimum contacts with the State of Indiana to support this Court's exercise of personal jurisdiction over it. Miller does not claim that British Gas does have sufficient contacts with Indiana, but rather points to British Gas' aggregate contacts with the United States. Miller relies primarily on a Ninth Circuit case, *Go–Video, supra*, in support of a "national contacts" approach. Without citing any authority, British Gas counters that *Go–Video* is not controlling because neither the Federal Circuit nor the Seventh Circuit would apply the national contacts test to this case.[3] *See, Defendant's Reply Brief* at 2–5. While British Gas is correct in observing that neither the Federal Circuit nor the Supreme Court has expressly accepted a national contacts test, neither have they expressly rejected such a test. It is clear, however, that the Seventh Circuit does apply a national contacts test in federal question cases such as this one, where a federal statute provides for nationwide service of process. *See, United Rope Distributors v. Seatriumph Marine*, 930 F.2d 532, 534 (7th Cir.1991). In such cases, the Seventh Circuit has consistently held that "due process requires only that the

---

**2.** Additionally, the Court notes that while British Gas attempts to use Section 293 to limit jurisdiction, section 293 was "intended to broaden a plaintiff's ability to bring foreign defendant patent owners within the reach of a federal court". *Riker*, 636 F.2d at 776, *citing, Japan Gas Lighter Assn. v. Ronson Corp.*, 257 F.Supp. 219, 231 (D.N.J.1966). *See also, Nat'l Patent Dev. v. TJ Smith & Nephew Ltd.*, 877 F.2d at 1008 (Section 293 was added "for the benefit of American residents desiring to bring action against foreign owners of U.S. patents", *citing*, Hearings on H.R. 3760 Before the Subcomm. No. 3 of the House Comm. on the Judiciary, 82nd Cong., 1st Sess. 91 (1951)).

**3.** The Federal Circuit has appellate jurisdiction over all matters on appeal from a final judgment where the jurisdiction of the district court was based in whole or in part on 28 U.S.C. § 1338(a).

*U.S. Philips Corp. v. Windmere Corp.*, 861 F.2d 695, 702 (Fed.Cir.1988), *cert. denied*, 490 U.S. 1068, 109 S.Ct. 2070, 104 L.Ed.2d 635 (1989). On appeal, the Federal Circuit would apply Federal Circuit law over jurisdictional issues unique to patent law, but would apply Seventh Circuit law with regard to jurisdictional issues not unique to patent law. *See, Carroll Touch, Inc. v. Electro Mechanical Systems, Inc.*, 15 F.3d 1573, 1583 (Fed.Cir.1993) ("We must approach a federal antitrust claim as would a court of appeals in the circuit of the district court whose judgment we review." (citations omitted)); *Akro Corporation v. Luker*, 45 F.3d 1541, 1543 (Fed.Cir. 1995), *cert. denied* ——— U.S. ———, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995). Therefore, we look to Federal Circuit and Seventh Circuit, as well as Supreme Court precedents in analyzing jurisdictional issues.

defendant possess sufficient contacts with the United States." *Id.*[4]

British Gas, nonetheless, maintains that the Seventh Circuit would not adopt a national contacts approach in this case. In support of this argument, British Gas cites *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137 (7th Cir.1975) and *United Rope, supra.* These cases are distinguishable from the instant case in that the Seventh Circuit declined to adopt a national contacts approach in both *Honeywell* and *United Rope* precisely because there was *no* federal statute providing for nationwide service of process applicable in those cases.[5]

Next, seemingly ignoring the presence of an antitrust claim in this suit, British Gas argues that a national contacts approach cannot be applied in this case because the patent laws do not provide for nationwide service of process. *See, Defendant's Reply Brief* at 6. Neither Miller nor this Court disagrees with the assertion that a national contacts approach would not apply where the claim of personal jurisdiction is based on the patent laws. However, that is not the case here because personal jurisdiction in this case is based upon the antitrust laws, which do provide for nationwide service of process.

Finally, British Gas seems to claim that, in any event, national contacts analysis should not be employed here because it was abrogated by the enactment of Fed.R.Civ.P. 4(k)(2).[6] *See, Defendant's Reply Brief* at 9–10. British Gas argues that because Rule 4(k)(2) applies where the defendant does not have sufficient contacts with any single state, and because they admittedly have sufficient contacts with New Jersey, Rule 4(k)(2) does not apply to this case. British Gas is correct in that Rule 4(k)(2) does not provide for jurisdiction in this case; however, this neither means that Rule 4(k)(1)(D) does not provide for jurisdiction, nor that a national contacts approach is inapplicable. The legislative history and case law treatment of Rule 4(k)(2) confirm that it was intended to respond to a gap in the enforcement of the federal law by *extending* the reach of federal courts to cases in which there is neither a federal service of process provision applicable nor sufficient contacts with a given state. *See,* 2 *Moore's Federal Practice* at 4–420 (1995), *citing,* Fed.R.Civ.P. 4, Advisory Committee Notes to 1993 Amendments; *Omni Capital,* 484 U.S. at 111, 108 S.Ct. at 413. British Gas cannot successfully rely upon Rule 4(k)(2) to *limit* jurisdiction where it is already provided for under Rule 4(k)(1)(D) and the applicable federal long-arm statute.

**4.** *See also, Morris v. Martino*, 1995 WL 347947 (N.D.Ill.1995) ("where a federal statute provides for nationwide service of process, personal jurisdiction may be obtained over any defendant having minimum contacts with the United States as a whole"); *Czechorski v. Executive Telecard, Ltd.*, 1995 WL 549946 (N.D.Ill.1995) (where 15 U.S.C. § 78aa provides for nationwide service of process, the court has personal jurisdiction over [defendant] if there is a nexus between [defendant] and the United States); *Matter of Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1294 (7th Cir.1992) ("When the national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation."); *Diamond Mortgage Corp. of Illinois v. Sugar*, 913 F.2d 1233, 1244 (7th Cir. 1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991) (holding that where Bankruptcy Rule 7004(d) provides for nationwide service of process, contacts with state are irrelevant because defendant had sufficient contacts with the United States); *De Ortiz*, 910 F.2d at 382 (in federal question cases, due process requires only sufficient contacts with the United States as a whole rather than with any particular state); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668 (7th Cir.1987); *Fitzsimmons v. Barton*,

589 F.2d 330, 333 n. 4 (7th Cir.1979) (national contacts analysis applies where Congress has authorized nationwide service of process).

**5.** In *Honeywell*, the panel declined to apply a national contacts test because it was a patent action in which no federal statute provided for nationwide service. *United Rope*, as discussed above, held that where a national statute provides for nationwide service, national contacts is the correct approach. However, because neither the applicable statute (the Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300–15) nor any other pertinent federal statute authorized service of process in that case, the panel declined to consider the defendant's national contacts.

**6.** Fed.R.Civ.P. 4(k)(2) reads as follows:

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

In determining what constitutes sufficient contact with a forum to allow a court to exercise personal jurisdiction, a court must examine the facts and circumstances on a case-by-case basis. *See Honeywell*, 509 F.2d at 1143. The court may consider affidavits and other documents outside the pleadings in reaching its decision on jurisdiction, *see Nelson by Carson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 79 L.Ed.2d 682 (1984), but must construe all facts concerning jurisdiction in favor of the non-movant, including disputed or contested facts. *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.*, 726 F.2d 1209, 1215 (7th Cir.1984). British Gas apparently does not claim that it's contacts with the United States would be insufficient to support jurisdiction under a national contacts approach; rather, it maintains that such an approach is inapplicable. In any case, this Court finds that British Gas' contacts with the United States are more than sufficient to comport with due process. Not only has British Gas granted licenses on its United States patents to at least one United States corporation, PIM Corporation in New Jersey; but British Gas admits that it "does have sufficient minimum contacts with the State of New Jersey to be amenable to suit there".[7] *Defendant's Reply Brief* at 9. Furthermore, as discussed above, as a foreign holder of a U.S. patent, British Gas is also potentially subject to suit in the District Court for the District of Columbia under 35 U.S.C. § 293. It would be illogical to hold that a defendant whose contacts with at least one state are sufficient to support jurisdiction, and which is also potentially subject to jurisdiction in the District of Columbia, nonetheless has insufficient contacts with the United States to support jurisdiction in a federal court. British Gas' aggregate contacts with the United States, which at a minimum include its license agreements with one or more U.S. companies[8], its status as a U.S. patent holder, and a service contract for an oil refinery,[9] are sufficient to support personal jurisdiction in this Court under a national contacts approach.

### 3. Pendent Personal Jurisdiction over the Patent Claim

Miller asserts that the doctrine of pendent personal jurisdiction allows this Court to exercise jurisdiction over British Gas as to the patent infringement claim in Count II. British Gas argues that pendent jurisdiction applies only to jurisdiction over the subject matter of the claim, and not to personal jurisdiction. British Gas also implicitly argues that pendent jurisdiction can only be used to exercise jurisdiction over related state claims, but not over related federal claims. British Gas is incorrect on both counts. The doctrine of pendent jurisdiction applies to personal as well as subject matter jurisdiction, and to federal as well as state claims.

In fact, the Seventh Circuit has held that pendent personal jurisdiction applies in particular to cases like this one, "in which personal jurisdiction of one claim was based on a federal statute authorizing nationwide service of process" *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 913 (7th Cir.1994), *citing, IUE AFL–CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056–57 (2nd Cir.1993). *See also, Oetiker v. Jurid Werke, G.m.b.H*, 556 F.2d 1, 4 (D.C.Cir.1977) (where 35 U.S.C. § 293 authorized personal jurisdiction over defendant with respect to patent claims, the doctrine of pendent personal jurisdiction "enabled plaintiff to obtain personal jurisdiction over defendant with respect to any of his claims that arose out of the same core of operative

---

7. In fact, British Gas was party to patent litigation in the District Court for the District of New Jersey, in *Trenchless Replacement Systems, Ltd. v. British Gas plc and PIM Corp.*, which, as discussed above, was recently dismissed pursuant to a settlement agreement.

8. In his declaration, Frank S.D. Roper, Senior Legal Advisor with British Gas, states that British Gas has granted licenses on its patents to "various U.S. licensees, including PIM Corpora-

tion of New Jersey, and other U.S. companies not located in Indiana". *See, Declaration of Frank S.D. Roper*, ¶ 14. Although it is unclear how many license relationships British Gas has with U.S. companies, it does appear that its relationship with PIM Corporation is not the only one.

9. *See, Id.*, ¶ 13.

fact") [10]; *United States Dental Institute v. American Association of Orthodontists,* 396 F.Supp. 565 (N.D.Ill.1975) (where service in a federal antitrust action was made, there was pendent personal jurisdiction over a libel action which arose out of the same nucleus of operative facts though no acts with regard to the libel took place within the forum state.)

Finally, as to the applicability of the doctrine of pendent jurisdiction over related federal claims, the U.S. Supreme Court has stated that exercise of pendent jurisdiction over federal claims is "at least as sure-footed" as the exercise of such jurisdiction over state claims. *Hagans v. Lavine,* 415 U.S. 528, 548, 94 S.Ct. 1372, 1385, 39 L.Ed.2d 577 (1974). In *Hagans,* the court additionally noted that it had previously "recognized the special capability of federal courts to adjudicate pendent federal claims." *Id.,* 94 S.Ct. at 1385 n. 14, *citing, Romero v. International Terminal Operating Co.,* 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).

▇ Having determined that pendent jurisdiction can be used to establish personal jurisdiction over related federal claims, this Court will now proceed to determine whether pendent personal jurisdiction exists in this case over the patent law claim. In order for this Court to have pendent personal jurisdiction over the patent law claim in this case, we must first determine that the antitrust claims and the patent claim "derive from a common nucleus of operative fact ... such that [a party] would ordinarily be expected to try them all in one judicial proceeding ..." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

The antitrust claim alleges that, in an effort to gain a monopoly in the trenchless repair/replacement market, British Gas contacted Miller's customers and implied that Miller's XPANDIT system (including the Yarnell Mole described in the '268 patent)

infringes British Gas' '565 patent. The patent claim alleges that British Gas makes, uses, and or sells hydraulic pipe bursting systems which infringe Miller's '268 patent. Both claims involve both British Gas' and Miller's pipe bursting devices as well as both parties' patents for these devices. Both claims will presumably raise detailed questions about the characteristics of and the methods for using these devices. Because the same evidence will be relevant to both claims, and particularly because both claims will pose the same highly technical questions regarding the parties' patents and pipe bursting devices, this court finds that the patent and antitrust claims "derive from a common nucleus of operative fact" and that they should be tried in one judicial proceeding.

Based upon the foregoing reasoning, this Court finds that personal jurisdiction exists over British Gas as to the antitrust claim pursuant to 15 U.S.C. § 22, and as to the patent claim pursuant to the doctrine of pendent personal jurisdiction. Therefore, British Gas motion to dismiss for lack of personal jurisdiction is DENIED.

### B. *Motion to Transfer*

▇ In the alternative, British Gas moves to transfer this case to the District Court for the District of Columbia, pursuant to 28 U.S.C. § 1406(a). That section provides for transfer or dismissal of cases where *venue* is improperly laid.[11] Section 1406(a) does not apply in this case because, as discussed above, venue is properly laid in this District pursuant to 28 U.S.C. § 1391(d). In fact, because section 1391(d) provides that an alien may be sued in any district, it appears that section 1406(a) would most likely never support transfer of a case against an alien defendant.

---

10. British Gas' assertion, on page 14 of its Reply Brief, that *Oetiker* "did not involve pendent jurisdiction" is patently false. *Oetiker* not only approves of the exercise of pendent personal jurisdiction in that particular litigation, but it provides a long list of precedents upholding the exercise of pendent personal jurisdiction. *See, Oetiker,* 556 F.2d at 5, n. 10.

11. 28 U.S.C. § 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

British Gas also cites (in a footnote) 28 U.S.C. § 1631 in support of its motion to transfer. That section provides for transfer to cure lack of jurisdiction. Because this court finds that jurisdiction is proper over British Gas in this District, section 1631 also does not apply in this case.

■ The transfer statute which would apply in cases such as this one, where both jurisdiction and venue are properly laid, is 28 U.S.C. § 1404(a), which provides for transfer "[f]or the convenience of parties and witnesses, [and] in the interest of justice". Even if British Gas had properly asserted section 1404(a), the facts of this case do not support transfer under that section. It is well established that there is a strong presumption in favor of the plaintiff's choice of forum. *See, Roynat, Inc. v. Richmond Transp. Corp.,* 772 F.Supp. 417, 420 (S.D.Ind. 1991) (citations omitted). Furthermore, this court finds no reason why it would be any more "convenient" for this case to be heard in the District of Columbia. Neither party is located in the District of Columbia, whereas the plaintiff has it's principal place of business in Indianapolis, Indiana. There is no reason to believe that any witnesses or evidence would be located in the District of Columbia, whereas both witnesses and evidence are located at or near Miller's principal place of business in Indianapolis. Finally, British Gas would be no more burdened by a lawsuit in Indiana than it would be by a suit in the District of Columbia. *See, Max Daetwyler Corp. v. Meyer,* 762 F.2d 290, 294 (3rd Cir.1985) ("corporations who are headquartered in foreign lands are no more inconvenienced by a trip to one state than another.") (citations omitted). There being no statutory basis for transfer of this case to the District of Columbia, British Gas motion to transfer is therefore **DENIED.**

C. *British Gas' Additional Non–Jurisdictional Arguments*

British Gas also raises for the first time in its Reply Brief several non-jurisdictional arguments for dismissal. Specifically, British Gas claims, (1) that 35 U.S.C. § 271 provides it with immunity from Miller's antitrust charges, and (2) that Miller has failed to allege facts sufficient to state an antitrust claim. *See, Defendant's Reply Brief* at 15, *Defendant's Amendment to Motion to Dismiss.*

■ These arguments were not mentioned in the Motion to Dismiss or in the initial supporting brief. In the Reply Brief British Gas gives these arguments cursory treatment at best, (arguably because it senses its "thin-ice" position in having advanced them at all at this belated point). In any event, these non-jurisdictional arguments do not properly belong in a Motion to Dismiss for Lack of Jurisdiction under Fed. R.Civ.P. 12(b)(2). They are more appropriately raised in a motion under Fed.R.Civ.P. 12(b)(6), or in argument at trial. Therefore, we will not address these arguments at this time. Should British Gas wish to pursue these contentions further, it should raise them in the appropriate context and fully brief them for the benefit of both the opposing party and the Court.

## III. CONCLUSION

For the reasons explained above, the Court rules as follows:

(1) Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED,** as jurisdiction over Defendant is proper pursuant to Fed.R.Civ.P. 4(k)(1)(D) and 15 U.S.C. § 22.

(2) Defendant's Motion to Transfer is **DENIED** because both 28 U.S.C. § 1406(a) and 28 U.S.C. § 1631 are inapplicable to this case, and there is no factual basis for transfer pursuant to 28 U.S.C. § 1404(a).

(3) Defendant's Motion to Stay is **DENIED AS MOOT,** as the related case upon which this Motion is based has been resolved.

It is so ORDERED.